# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| In the Matter of a Deposition Subpoena Served in:<br><br>Schnatter v. 247 Group, LLC, *et al.*, pending in the United States District Court for the Western District of Kentucky, Case No. 3:20-cv-00003-BJB-CHL | Misc. Action No. _____ |
| Sonya Medina,<br><br>            Movant,<br><br>v.<br><br>John H. Schnatter,<br><br>            Respondent. | |

**SONYA MEDINA'S MOTION TO QUASH DEPOSITION SUBPOENA
<u>AND BRIEF IN SUPPORT</u>**

Movant Sonya Medina files this Motion to Quash and Brief in Support, pursuant to Rule 45(d)(3) of the Federal Rules of Civil Procedure, requesting that this Court (i) quash a deposition subpoena (attached as Ex. A-1, the "Deposition Subpoena") [1] issued in connection with Respondent John H. Schnatter's civil case pending in the United States District Court for the Western District of Kentucky (the "Kentucky Action"), (ii) stay compliance with the Deposition Subpoena until this Court resolves the instant motion, and (iii) grant such other relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

On March 28, 2022, Respondent, the Plaintiff in the Kentucky Action, served the Deposition Subpoena on Sonya Medina, demanding that Ms. Medina sit for a deposition in Austin, Texas. The Deposition Subpoena is unduly burdensome on Ms. Medina, who is neither a party nor a representative of any party to the Kentucky Action, and entirely cumulative given Respondent deposed another non-party with the same information on the exact same topics. Respondent's only intent here is to harass and thus the subpoena to Ms. Medina should be quashed.

## BACKGROUND

According to the operative complaint in the Kentucky Action, in January 2018, following remarks Respondent made about "anthem protests" occurring during NFL games, Papa John's International, Inc. ("Papa John's") tasked Laundry Service, an advertising agency, with rebuilding Respondent's reputation. Ex. A-2 (Kentucky Action Docket Sheet); Ex. A-3 (Amended Compl.) ¶¶ 3, 28. At the time, Respondent was a board member of Papa John's and was featured

---

[1] References to Exhibits A-1 through A-9 are those exhibits annexed to the Declaration of Marina Stefanova, submitted herewith as Exhibit A.

prominently on the company's advertisements given he was also the founder. *Id.* ¶¶ 2, 23. In May 2018, Respondent used the N-word on a call with Laundry Service. *Id.* ¶ 32.

On July 11, 2018, Forbes published an article titled, "Papa John's Founder Used N-Word on Conference Call" (the "Forbes Article"), which repeated Respondent's statements from the May 2018 call. *Id.* ¶ 38. Respondent immediately resigned as chairman of Papa John's. *Id.* ¶ 39. Two days later, on July 13, 2018, Papa John's announced that Respondent would no longer appear in any advertising or marketing materials for the company. *Id.* ¶ 40. The same day, Papa John's terminated its Agreement for Service as Founder ("Founder Agreement") with Respondent. *Id.* ¶ 41. Respondent remained on Papa John's board of directors until he agreed in March 2019 to either resign in advance of or not seek reelection at the April 2019 annual shareholders meeting. Ex. A-4 (April Proxy Statement). Then, on September 11, 2019, Papa John's canceled its Licensing Agreement with Respondent. Ex. A-3 (Amended Compl.) ¶ 43.

On December 31, 2019, Respondent commenced a case in state court, later removed to the United States District Court for the Western District of Kentucky, against Laundry Service and its parent company, alleging that Laundry Service violated its contractual and common law duties not to disclose Respondent's statements and further damage Respondent's image, reputation, and business opportunities. *Id.* ¶¶ 44–81. Neither Papa John's nor Ms. Medina—nor any director or officer of Papa John's, for that matter—is a defendant in the action. *See id.* Indeed, each of Respondent's claims against Laundry Service centers on the disputed allegation that Laundry Service leaked to Forbes Respondent's remarks during the May 2018 call. Nonetheless, Respondent sought and received extensive discovery from non-party Papa John's, including documents and a deposition of Steve Ritchie, Papa John's CEO during the events alleged in the Kentucky Action. Two other high-level Papa John's former employees, Brandon Rhoten (former

Chief Marketing Officer), and Katie Wollrich, (former VP of Marketing and Advertising), have also been deposed in the Kentucky Action. Still, on March 28, 2022, Respondent served a deposition subpoena on Ms. Medina. According to Respondent's initial disclosures, Respondent seeks to depose Ms. Medina on the exact same topics as non-party Ritchie: "Mr. Schnatter's resignation as Chairman of Papa John's International, Inc., the termination of the Founder Agreement and Licensing Agreement between the company and Mr. Schnatter, and the removal of Mr. Schnatter from any advertising or branding for the company." Ex. A-5 (John Schnatter's First Amended Initial Disclosures) at 13, 14.[2]

Given the foregoing, on April 11, 2022, counsel for Ms. Medina requested a call with Respondent's counsel. Respondent's counsel confirmed that Mr. Ritchie intended to sit for a deposition in mid-May 2022.[3] Ms. Medina's counsel questioned Ms. Medina's relevance to the Kentucky Action against Laundry Service, raised a concern that Ms. Medina's testimony would be cumulative of Mr. Ritchie's, and asked that Respondent withdraw the subpoena. On April 29, 2022, Respondent's counsel replied that she would not withdraw the subpoena. On May 12, 2022, the parties conferred in an effort to avoid motion practice but reached an impasse.

---

[2] Unlike his disclosures as to Ms. Medina, Respondent also lists for Mr. Ritchie topics that directly relate to his allegations that Laundry Service improperly leaked Respondent's statements. Ex. A-5 (John Schnatter's First Amended Initial Disclosures) at 14 ("Information related to Laundry Service's work for Papa John's International Inc. and any affiliated entities, including the May 22, 2018 conference call referenced in the Complaint; . . . the termination of Services Agreement between the company and Laundry Service; and related communications between Mr. Ritchie and Casey Wasserman.").

[3] On May 10, 2022, Respodent's counsel, in fact, deposed Mr. Ritchie.

3

**ARGUMENT**

I.      **The Deposition Subpoena Is Unduly Burdensome and Should Be Quashed**

Federal Rule of Civil Procedure 45(d)(1) provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." The Rule requires a court to quash or modify a subpoena if the movant proves that the subpoena subjects the movant to an undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iv). "Whether a subpoena imposes an undue burden is a question of reasonableness determined by balancing the benefits and burdens of the deposition and whether the information is obtainable from an alternative source." *Davila v. Webb Cty.*, No. 12-cv-42, 2013 WL 12142346, at *1 (S.D. Tex. Mar. 14, 2013) (citation omitted).

Moreover, it is clear that there is a preference for obtaining discovery in litigation from the parties to the litigation. *See, e.g.*, *Orchestrate HR, Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2014 WL 772859, at *4 (N.D. Tex. Feb. 27, 2014) (granting motion to quash as to categories of documents that could instead be obtained from defendant in the litigation and concluding "it should not be necessary for Plaintiff to obtain copies of the documents from the non-parties"). Thus, when a party seeks discovery from a non-party, like Ms. Medina, that party faces a heightened standard in the balance of benefit versus burden. *See IFG Port Holdings, LLC v. Lake Charles Harbor & Terminal Dist.*, No. 16-CV-00146, 2018 WL 11388132, at *2 (W.D. La. July 9, 2018) (citations and quotations omitted) (noting that Rule 45(d)(1) "affords non-parties a higher protection in terms of the burden that can be imposed upon them" and granting motion to quash third-party subpoena); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("[I]f the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party.").

4

Here, Respondent cannot meet this standard in seeking the deposition of Ms. Medina—a true non-party in that she is an outside director of Papa John's, which itself is a non-party to the underlying litigation.  And, the burdens of deposing yet a fourth non-party individual affiliated with non-party Papa John's clearly outweigh the benefits for two independent reasons.  First,  the Deposition Subpoena is cumulative in that it seeks information no different than that already sought from Mr. Ritchie, as set forth in Respondent's initial disclosures in the Kentucky Action.  *See* Ex. A-5.  Moreover, Ms. Medina likely has less information about Respondent's claims against Laundry Service than Mr. Ritchie given she was an outside director and Mr. Ritchie was an officer during the relevant time.[4]  Since any deposition of Ms. Medina on the same issues as those propounded to Mr. Ritchie is likely to be entirely cumulative, the Deposition Subpoena should be quashed.  *See Peairs v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-652, 2021 WL 5371553, at *6 (M.D. La. Nov. 17, 2021) ("[A]ny relevant and proportional information sought in the [deposition] subpoena . . . can be obtained by more convenient and less burdensome methods, such as from ... the Plaintiffs' own deposition testimony.").[5]  The deposition of Ms. Medina would be particularly cumulative here, given that *two other* high-level former employees of Papa John's in addition to Mr. Ritchie have also been deposed: Brandon Rhoten (former Chief Marketing Officer), and Katie

---

[4] Ms. Medina has been a director of Papa John's since 2015.  Mr. Ritchie was Papa John's Senior Vice President and Chief Operating Officer since May 2014; President and Chief Operating Officer from July 2015 to December 31, 2017; CEO from January 1, 2018 through August 26, 2019; and a member of the board from February 4, 2019 through September 6, 2019.  *See* Ex. A-6 (Form 8K/A Sept. 6, 2019) at 2; Ex. A-7 (Form 10K Mar. 8, 2019) at 30.  After his departure from the board, Mr. Ritchie continued to work closely with the board to assist with transition matters related to his former role, franchisee relations, and other matters as requested by the board or Papa John's.  *See* Ex. A-6 (Form 8K/A Sept. 6, 2019) at 2.

[5] Moreover, there is no legitimate reason that Ms. Medina, a non-party, should be made to testify about any communications that Respondent himself likely participated in while he remained on the board of directors.

Wollrich, (former VP of Marketing and Advertising). There is no basis for Respondent to obtain a *fourth* deposition on the same issues here.

Second, the Deposition Subpoena does not seek information that would be relevant to Respondent's allegations against Laundry Service in the pending Kentucky Action. Under Federal Rule of Civil Procedure 26(b)(1), parties may "obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1) (emphasis added). Although relevance is construed broadly, Rule 26 "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011); *see also MetroPCS v. Thomas*, 327 F.R.D. 600, 610 (N.D. Tex. 2018) ("[T]he provisions and structure of Rules 26 and 45 leave little doubt that the scope of permissible discovery from a third party is not broader than that permitted against a party."). As exemplified by Respondent's initial disclosures as to Ms. Medina, the apparent topics of inquiry under the Deposition Subpoena have no relevance to Respondent's underlying allegations against Laundry Service, which center on whether Laundry Service, in fact, leaked Respondent's remarks; whether Laundry Service breached its contractual obligations to Respondent; and whether Laundry Service specifically intended to ruin Respondent's relationship with Papa John's. *See, e.g.*, Ex. A-3 (Amended Compl.) ¶¶ 1, 10. These issues simply have nothing to do with Ms. Medina.

Instead, the Deposition Subpoena serves only to harass. Despite not bringing any claims against Papa John's or any of its directors (or having any basis to do so) in the Kentucky Action,

6

Respondent has made numerous public statements that the board of directors had "set up" Respondent on the May 2018 call with Laundry Service. Respondent explained that he believed that because the company wanted him out, it conspired with Laundry Service to "play the race card" and justify his separation from the company. *See* Ex. A-8 (Fox) at 2–3 (quoting Respondent's statement that the board "set up" Respondent because "[t]he company obviously wanted [him] out of the company" for "self-interest reasons"); *id.* at 3 (quoting Respondent's statement that "the set-up was 'how do we get him to say something or do something and tape it and misconstrue it and paint him as a racist' because . . . the only way to get rid of Papa John in Papa John's Pizza is to play the race card and they played it to the hill"); Ex A-9 (Newsweek) (quoting Respondent's interview statement that the board of directors "used the black community and race" to conspire against him and "steal the company"); *id.* (quoting Respondent's interview statement that the "day of reckoning will come" to those directors whom he claims went behind his back, and that "[t]he record will be straight"). It is thus apparent that the purpose of the subpoena is to retaliate against Ms. Medina for Papa John's cessation of its association with Respondent, and to pursue conspiracy theories that have no bearing on the Kentucky Action. This is not a sufficient basis for a non-party deposition subpoena, is not permissible under the Federal Rules, and should not be permitted here. *MetroPCS*, 327 F.R.D. at 627 (quashing non-party deposition subpoena where, on the record before the court, the non-party's expected testimony was irrelevant to the underlying litigation).

## **CONCLUSION**

For all of the above reasons, Ms. Medina respectfully requests that this Court quash Respondent's Deposition Subpoena served on Ms. Medina pursuant to Fed. R Civ. P. 45(d) and provide any other relief that the Court deems just and proper.

Dated:  May 19, 2022 Respectfully submitted,

*/s/ Marina Stefanova*
Marina Stefanova
Texas State Bar No. 24093200
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Telephone: (214) 969-5118
Facsimile: (214) 969-5100
mstefanova@jonesday.com

Michael J. Gray
JONES DAY
77 West Wacker Drive
Chicago, Illinois 60601-1692
Telephone: (312) 269-4096
Facsimile: (312) 782-8585
mjgray@jonesday.com
*Pro Hac Vice Application Forthcoming*

Nina Yadava
Abigael C. Bosch
JONES DAY
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-3746
Facsimile: (212) 755-7306
nyadava@jonesday.com
abosch@jonesday.com
*Pro Hac Vice Applications Forthcoming*

*Attorneys for Sonya Medina*

**CERTIFICATE OF CONFERENCE**

I hereby certify that on May 12, 2022, I conferred with counsel for Respondent regarding this Motion and the relief requested herein. Counsel for Respondent did not agree to withdraw the Deposition Subpoena and is opposed to the Motion. As a result, this Motion is submitted for the Court's consideration.

                                                      */s/ Nina Yadava*
                                                        Nina Yadava

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2022, a true and correct copy of the foregoing Motion to Quash Deposition and Brief in Support and all attached materials was served by email on the following:

Elisabeth S. Gray
Middleton Reutlinger
401 S. Fourth Street, Suite 2600
Louisville, KY 40202
Telephone: (502) 584-1135
Facsimile: (502) 540-2288
Email: egray@middletonlaw.com

*Attorneys for Respondent*
*John H. Schnatter*

                                                    */s/ Marina Stefanova*
                                                    Marina Stefanova